```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| **PEASE CONSTRUCTION, INC.,** ) | |
| ) | |
|     Plaintiff, ) | No. 10-2780 |
| ) | |
| v. ) | |
| ) | |
| **CROWDER-GULF JOINT VENTURE,** ) | |
| **LLP,** ) | |
| ) | |
|     Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Pease Construction, Inc. ("Pease Construction") brings claims for breach of contract and unjust enrichment against Defendant Crowder-Gulf Joint Venture, LLP ("Crowder-Gulf"). (See Compl. ¶¶ 9-16, ECF No. 1.)  Before the Court is Crowder-Gulf's December 3, 2010 Motion to Dismiss ("Motion") for want of personal jurisdiction. (See Mot. to Dismiss, ECF No. 5.) ("Mot.")  Pease Construction responded in opposition on January 26, 2011. (See Def.'s [sic] Resp. to Pl.'s [sic] Mot. to Dismiss, ECF No. 9.) ("Pl.'s Resp.")  Crowder-Gulf replied on February 1, 2011. (See Reply to Pease Construction, Inc.'s Resp. in Opp'n to Mot. to Dismiss, ECF No. 10.) ("Def.'s Reply").  For the following reasons, the Motion is GRANTED.

    **I.    Background**

Pease Construction alleges that, on or about September 29, 2008, it entered into a contract to work as a subcontractor for Crowder-Gulf on a debris hauling project in Montgomery County, Texas (the "Project"). (Compl. ¶¶ 1, 5; see Ex. A, ECF No. 1-1.) According to the complaint, Pease Construction furnished the labor, services, and materials required under the contract and, based on a verbal agreement, performed additional work for Crowder-Gulf on or about November 7, 2008. (Compl. ¶¶ 7, 10; see Ex. B, ECF No. 1-2.)

Pease Construction alleges that Crowder-Gulf defaulted on its obligations under the contract. (See Compl. ¶ 8.) Specifically, Pease Construction alleges that Crowder-Gulf failed and refused to pay it at least $114,368.96; failed and refused to pay it in a timely manner, preventing it from paying its subcontractors; interfered with its work and that of its subcontractors; refused to allow it or its subcontractors to perform work as scheduled; and failed and refused to pay it for additional work on the Project. (Id. ¶ 11.) Pease Construction asserts that those acts constitute breach of contract and unjust enrichment. (Id. ¶¶ 9-16.) Crowder-Gulf has moved to dismiss Pease Construction's claims for want of personal jurisdiction. (See Mot.)

According to affidavits in the record, the parties began their business relationship in late September 2008. (See Pease

Aff., ECF No. 9-1; Hall Aff., ECF No. 5-1.) In his affidavit, Eric Hall ("Hall"), Debris Reduction Manager for Crowder-Gulf, states that, on September 27, 2008, while he was in Montgomery County, Texas, Larry Pease ("Pease"), owner of Pease Construction, contacted him by telephone. (Hall Aff. ¶¶ 4, 6.) Hall states that Pease told him that Pease Construction had numerous trucks that could assist Crowder-Gulf with the Project. (Id. ¶ 4.) According to Hall, because Pease told Hall that the trucks would come from Austin, Texas, Hall assumed that Pease Construction was based in Texas. (Id. ¶ 5.)

In Pease's affidavit, he states that, on September 27, 2008, one of his business associates, Don Childers, told him about an opportunity for Pease Construction to work for Crowder-Gulf on the Project in Texas. (Pease Aff. ¶ 3.) According to Pease, he was "contacted by Hall by telephone at [his] office in Collierville, Tennessee to discuss delivery of 26 trucks and necessary loaders at [Crowder-Gulf's] storage yard in Montgomery County[,] Texas on Monday[,] September 29, 2008." (Id. ¶ 4.) Pease does not state when that telephone call took place. (See id.)

According to Hall, Pease travelled to Texas to review a potential contract between Pease Construction and Crowder-Gulf for work on the Project. (Hall Aff. ¶ 7.) Hall does not state when that visit occurred. (See id.) Hall states that, while in

3

Texas, Pease received a copy of a contract for "load-in work" that Pease Construction might perform if it had the necessary equipment. (Id. ¶¶ 7-8.) According to Hall, when Pease received the contract, Pease did not know whether Pease Construction had the necessary equipment available for the Project. (Id. ¶ 8.) Hall states that, although Pease received a copy of the contract in Texas and was instructed to return it to Crowder-Gulf's agents in Texas, Pease did not do so. (Id. ¶ 9.)

In Pease's affidavit, he states that Crowder-Gulf sent contracts to his office in Collierville, Tennessee; that he was instructed to return those contracts to Theodore, Alabama; and that he signed the contract on which he bases his claims in his office in Collierville, Tennnessee. (Pease Aff. ¶¶ 8-9.) The contract appears to have been drafted by Crowder-Gulf. (See Ex. A.) However, no one from Crowder-Gulf executed it. (See Hall Aff. ¶ 9; Ex. A.)

Pease states that, on September 29, 2008, Pease Construction delivered the trucks and loaders that Hall had requested by telephone to the Project site, but that they sat idle until October 1, 2008. (See Pease Aff. ¶¶ 5-6.) According to Hall, on October 2 and October 3, 2008, Pease Construction performed some "load-out work" on the Project, but that work was not covered by the contract. (See Hall Aff. ¶ 9.) The "load-

4

out work" on October 2 and 3 was the only work Pease Construction Performed on the Project, and that work occurred in Montgomery County, Texas. (Id. ¶ 11.)

Hall states that all of his communications with Pease Construction occurred in Texas and related exclusively to the Project. (See id. ¶¶ 10-11.) According to Hall, he and Pease did not discuss any other potential contracts or projects. (See id. ¶ 11.) Pease states that "[a]ll of [his] conversations by phone or email with Eric Hall occurred from [his] office in Collierville, Tennessee" and that Pease Construction's telephone number has a Memphis, Tennessee area code. (Id. ¶ 7.) Although Pease states that he "performed all of the negotiations and billing from [his] office in Collierville, Tennessee," he does not state whether he and Hall had any in-person conversations. (Cf. id.)

**II. Subject Matter Jurisdiction**

Pease Construction asserts that subject matter jurisdiction is proper under 28 U.S.C. § 1332(a). (Id. ¶ 3.) Pease Construction is a Tennessee corporation with its principal place of business in Collierville, Tennessee. (Id. ¶ 1.) Crowder-Gulf is an Alabama corporation with its principal place of business in Theodore, Alabama. (Id. ¶ 2.) Therefore, complete diversity exists. See V & M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citation omitted). Because Pease

5

Construction seeks compensatory damages of at least $144,368.96 and an unnamed amount of punitive damages, more than $75,000 is in controversy. (See Compl. 4.) The amount-in-controversy requirement is satisfied. See 28 U.S.C. § 1332(a). This Court has subject matter jurisdiction.

### III. Personal Jurisdiction

#### A. Standard of Review

A plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). Where the court does not conduct an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction" to survive a motion to dismiss for want of jurisdiction. Id. (internal quotation marks and citation omitted). A court reviews pleadings and affidavits in the record, but does "not consider facts proffered by the defendant that conflict with those offered by the plaintiff" and "construe[s] the facts in the light most favorable to the nonmoving party." Id. (citations omitted); see Kerry Steel, Inc. v. Paragon Indus., 106 F.3d 147, 149 (6th Cir. 1997) (reviewing the parties' pleadings and affidavits). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." Bridgeport Music,

6

Inc. v. Still N the Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003) (quoting Kerry Steel, 106 F.3d at 149).

### B. Analysis

"In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005) (citations omitted). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." Bridgeport Music, Inc., 327 F.3d at 477 (citations omitted). Because "the Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," federal courts in Tennessee may exercise personal jurisdiction over an out-of-state defendant if doing so comports with federal due process requirements. Id. (citation omitted).

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be specific or general,

7

depending on the type of minimum contacts maintained by the out-of-state defendant. Id. (citation omitted). General jurisdiction "depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." Kerry Steel, 106 F.3d at 149 (citations omitted). Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." (citations and internal quotation marks omitted). Id. Pease Construction contends that this Court has specific personal jurisdiction over Crowder-Gulf. (See Pl.'s Resp. 3-6.)

In Southern Machine Company v. Mohasco Industries, Inc., the Court of Appeals promulgated a three-part test to decide whether specific personal jurisdiction exists and to protect a defendant's due process rights. See S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968) (citations omitted). That test states:

> First, the defendant must purposefully avail [it]self of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

8

Id. The Mohasco test remains the starting point for analyzing questions of personal jurisdiction. Kerry Steel, 106 F.3d at 149; see Citizens Bank v. Parnes, 376 F. App'x 496, 502-03 (6th Cir. 2010) (applying the Mohasco test) (citation omitted).

The essence of Crowder-Gulf's argument is that it has not purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. (See Mot. ¶ 3.) Specifically, Crowder-Gulf argues that, through its agents, Pease Construction contacted Crowder-Gulf in Texas, discussed a contract with and received a contract from Crowder-Gulf in Texas, and performed the work due under that contract in Texas. (See id.; see also Def.'s Reply 2-3.) The essence of Pease Construction's argument is that, through its agents, Crowder-Gulf purposefully availed itself of the privilege of acting in Tennessee because Crowder-Gulf contacted Pease Construction at its Tennessee telephone number, sent a contract to Pease Construction at its Tennessee address, and received invoices from Pease Construction with a Tennessee payment address. (See Pl.'s Resp. 1-2, 4.)

To satisfy the first requirement of specific personal jurisdiction, the defendant "must have purposefully availed [it]self of 'the privilege of acting in the forum state or causing a consequence in the forum state.'" Air Prods., 503

9

F.3d at 551. Where a defendant's contacts with the forum state result from actions the defendant itself undertakes, the defendant has purposefully availed itself of the privilege of acting in the state. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Physical presence in the forum state is not required, but a defendant's connection to the forum state must be "substantial," rather than a result of "random," "fortuitous," or "attenuated" circumstances. Id.

"The Supreme Court has emphasized, with respect to interstate contractual obligations, that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." Lak, Inc. v. Deer Creek Enters., 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting Burger King, 471 U.S. at 473) (internal quotation marks omitted). An out-of-state defendant's entering into a contract with a plaintiff in the forum state does not automatically subject the defendant to personal jurisdiction in the forum state. See Air Prods., 503 F.3d at 551 (citation omitted); Lak, Inc., 885 F.2d at 1301 (citation omitted). "Factors to consider are 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of

10

dealing.'"  Air Prods., 503 F.3d at 551 (quoting Burger King, 471 U.S. at 479).

In Cole v. Mileti, the Court of Appeals suggested that the formation of a contract by telephone and mail supports a finding that a defendant has personally availed itself of the privilege of acting in the state where its communications are directed. See 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." (citations omitted)). Other authority suggests that a defendant's use of the telephone and mail to form a contractual relationship or to conduct business with an out-of-state party does not by itself constitute personal availment. See Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1119 (6th Cir. 1994) ("Moreover, [t]he use of interstate facilities such as the telephone and mail is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." (citation and internal quotation marks omitted)); Lak, Inc., 885 F.2d at 1301 ("The telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the Burger King Court rejected as a basis for

11

haling non-resident defendants into foreign jurisdictions." (citation omitted)). Courts are to consider the "quality rather than the quantity of the contacts" and "the quality of the parties' relationship, rather than the duration of the relationship." Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000) (citation omitted).

In Calphalon, the Court of Appeals considered a Minnesota defendant that had served as an Ohio plaintiff's exclusive sales representative in certain states other than Ohio for seventeen years. See id. at 720-21. Over the course of that contractual relationship, the defendant had visited the plaintiff in Ohio twice and had corresponded regularly with the plaintiff by telephone, mail, and fax. See id. The Court of Appeals concluded that the defendant had not purposefully availed itself of the privilege of acting or causing a consequence in Ohio because its contacts there "occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create 'continuous and substantial' consequences there." Id. at 723. "Following Calphalon, courts analyzing personal jurisdiction in the context of a contractual relationship have often distinguished Cole, or cautioned that its holding should not be read outside of the factual context in which it was written." McMunigal v. Bloch, No. 1:09CV01674,

2010 WL 2106186, at *9 (N.D. Ohio May 25, 2010) (collecting cases) (citations omitted).

Where a defendant responds to an out-of-state plaintiff's business proposition "without leaving home," it does not "reach out beyond one state and create continuing relationships and obligations with citizens of" the plaintiff's state. See Kerry Steel, 106 F.3d at 151 (citation and internal quotation marks omitted). In Kerry Steel, an Oklahoma defendant's responding to an unsolicited sales call from a Michigan plaintiff, negotiating an order from the plaintiff by telephone and fax, and receiving an order from the plaintiff did not constitute personal availment. See id. at 152. The court stated, "To hold otherwise would be to offend against the traditional notions of fair play and substantial justice of which the Supreme Court spoke in International Shoe." Id. (citation omitted).

There is some ambiguity about the origin of the contractual relationship between Pease Construction and Crowder-Gulf. Hall states in his affidavit that Pease contacted him on September 27, 2008, to offer Pease Construction's assistance with the Project. (See Hall Aff. ¶ 4.) Although Pease states that Hall called him at his Tennessee telephone number to "discuss delivery" of the trucks, he does not state when that call occurred or dispute that he initially called Hall to pitch Pease Construction as a possible subcontractor for the project. (See

13

Pease Aff. ¶ 4.) Because the two affidavits do not conflict on that point, Hall's statement that the parties' relationship began when he received a call from Pease on September 27, 2008, offering Pease Construction's services on the Project stands uncontroverted. Therefore, as in Kerry Steel, because Pease Construction originally contacted Crowder-Gulf with the proposition of hauling debris for the Project, Crowder-Gulf did not reach out to Tennessee. See McMunigal, 2010 WL 2106186, at *8; (Hall Aff. ¶ 4).

Even if Crowder-Gulf had initially contacted Pease Construction to solicit assistance with the Project, that would not necessarily mean that it personally availed itself of the privilege of acting or causing a consequence in Tennessee. Nothing suggests that Crowder-Gulf "intended to establish continuing relationships and obligations" in Tennessee. See Kerry Steel, 106 F.3d at 151 (citation omitted). Courts in this circuit have concluded that defendants do not purposefully avail themselves of the privilege of acting or causing a consequence in a forum state based on one-time, project-based contractual relationships. See, e.g., McMunigal, 2010 WL 2106186, at *7-10; Shook, Inc. Heavy & Envtl. Div. v. City of Moundsville Water Bd., No. 3:09CV00210, 2010 WL 761947, at *5-9 (S.D. Ohio Mar. 2, 2010); cf. Air Prods., 503 F.3d at 551 (noting that "the parties did not engage in a one-time transaction, but in a continuing

14

business relationship that lasted a period of many years" in concluding that the purposeful availment requirement was satisfied). In McMunigal, a district court considered a Delaware defendant that had contracted with an Ohio plaintiff to write a casebook for the corporation. See McMunigal, 2010 WL 2106186, at *1. Although the defendant had approached the plaintiff about writing the book and communicated with him by telephone, mail and email, the court concluded that the defendant had not purposefully availed itself of the privilege of acting or causing a consequence in Ohio in part because the defendant did not "intend to create an 'ongoing relationship' beyond the agreement to co-author the casebook." See id. at *1, 8 (adopting a magistrate judge's report and recommendation) (citation omitted).

In Shook, Inc., a district court considered a West Virginia defendant that had contracted with an Ohio plaintiff to install a water treatment facility in a West Virginia municipality. See 2010 WL 761947, at *1-2. The court adopted in full a magistrate judge's report and recommendation, which concluded that the defendant had not purposefully availed itself of the privilege of acting or causing a consequence in Ohio, despite its using a database that solicited bids from states other than West Virginia; negotiating and executing a contract with the plaintiff by telephone, mail, and email; and sending payments to

15

the plaintiff in Ohio. Id. at *6-9. The court reached that conclusion in part because "[t]he contract itself show[ed] that at most Defendant Moundsville engaged in a single and isolated transaction with Plaintiff Shook, . . . nearly all the performance of which occurred in West Virginia, not Ohio." Id. at *7.

Just as the "main purpose and effect" of the contract in Shook, Inc. "was the construction of [a] new water treatment facility in West Virginia," the main purpose and effect of Pease Construction's contractual relationship with Crowder-Gulf was the hauling of debris in Texas. See id. at *7; (Compl. ¶¶ 5-8; Ex. A). Aside from billing and paperwork, Pease Construction performed its work on the Project in Texas. See Shook, Inc., 2010 WL 761947, at *7; (Pease Aff. ¶¶ 5-6; Hall Aff. ¶ 10; Ex. A; Compl. ¶¶ 5-8). The contract is limited to the Project and does not contemplate any future dealings between Pease Construction and Crowder-Gulf. See Shook, Inc., 2010 WL 761947, at *7; (Ex. A). The parties did not discuss any other potential contracts or projects, and nothing suggests that they intended to create a business relationship lasting beyond the Project. See Air Prods., 503 F.3d at 551; (Hall Aff. ¶ 11). For those reasons, Crowder-Gulf has not purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. See

16

Air Prods., 503 F.3d at 551; McMunigal, 2010 WL 2106186, at *8-9; Shook, Inc., 2010 WL 761947, at *7-8.

Pease Construction argues that, because Pease "signed the contract while at his office in Collierville, Tennessee" and "performed all of his correspondence, billing, and negotiation with Defendant from his office in Collierville, Tennessee," Crowder-Gulf purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. (See Pl.'s Resp. 1-2.) That Pease may have conducted those activities in Tennessee on behalf of Pease Construction does not mean Crowder-Gulf is subject to personal jurisdiction in Tennessee. See Shook, Inc., 2010 WL 761947, at *8 (considering similar contacts and noting that, although the utility had sent payments to contractor "amounting to more than 14 million dollars, the vast bulk of the effects the parties' contract caused occurred in West Virginia"). Crowder-Gulf's limited dealings with Pease Construction in Tennessee occurred solely because Pease Construction happened to be headquartered there, not because Crowder-Gulf "sought to further its business and create continuous and substantial consequences there." See Calphalon, 228 F.3d at 723 (citation and internal quotation marks omitted). Crowder-Gulf's contacts with Tennessee are "the sort of 'random,' 'fortuitous' and 'attenuated' contacts" that do not

17

provide a basis for exercising personal jurisdiction. See Lak, Inc., 885 F.2d at 1301 (citation omitted).

Pease Construction has not made a prima facie showing that Crowder-Gulf reached out to Tennessee to create a continuing relationship there. See Lak, Inc., 885 F.3d at 1300. Crowder-Gulf has not purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. See Mohasco, 401 F.2d at 381. Therefore, the Court does not have specific personal jurisdiction over Crowder-Gulf. See id.

**IV. Conclusion**

Crowder-Gulf is not subject to personal jurisdiction in Tennessee, and this Court's exercise of specific personal jurisdiction over Crowder-Gulf would not comport with federal due process. Therefore, Crowder-Gulf's Motion is GRANTED. Pease Construction's claims are DISMISSED for want of personal jurisdiction.

So ordered this 27th day of May, 2011.

                                           s/ Samuel H. Mays, Jr.
                                           SAMUEL H. MAYS, JR.
                                           UNITED STATES DISTRICT JUDGE